UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELISE LAMARTINA-HOWELL, ET AL. | CIVIL ACTION |
| VERSUS | NO: 07-1168 |
| ST. TAMMANY PARISH SCHOOL BOARD, ET AL. | SECTION: R |

## ORDER AND REASONS

Before the Court are three motions filed by defendants Mandeville Police Department, Ronald Ruple, David Greenwood, Kalford Miazza, and Gregg Glaudi.[1] Specifically, these defendants have filed a Motion to Dismiss the Mandeville Police Department as a Party (R. Doc. 68), a Motion to Dismiss Official Capacity Claims against Mandeville Police Department Employees (R. Doc. 67), and a Motion for Summary Judgment (R. Doc. 69). All of the motions are unopposed.

For the following reasons, the Motion to Dismiss the Mandeville Police Department is GRANTED. The Motion to Dismiss Official Capacity Claims is DENIED. The Motion for Summary Judgment is GRANTED.

---

[1] Throughout this Order, "defendants" shall refer only to those defendants who are parties who have brought the motions before the Court.

## I. Background

This case arises out of a series of encounters between Plaintiff Elise LaMartina-Howell and officials of Tchefuncte Middle School in Mandeville, Louisiana, where LaMartina-Howell's nine-year-old son had enrolled. These encounters culminated in the School banning LaMartina-Howell and her husband from the School campus. LaMartina-Howell acknowledges in her complaint that she violated the ban in December of 2004, and alleges that in February of 2005, David Greenwood and Kalford Miazza of the Mandeville Police Department arrested her while she dropped her son off at school. She claims that the officers were acting under the authority of an unlawful warrant based on falsified evidence, and that the defendants prepared a false police report with falsified evidence and caused her to face trial.

LaMartina-Howell and her husband filed suit in this Court in 2007 against numerous defendants, including employees of the School, the St. Tammany Parish School Board, the Mandeville Police Department, and the St. Tammany Parish District Attorney. She alleges that all defendants falsely imprisoned her, maliciously prosecuted her, and violated her First Amendment rights. She further contends that they conspired to interfere with her civil rights in violation of 42 U.S.C. § 1985, and that they intentionally and negligently inflicted emotional distress upon her in violation of state law. The Mandeville Police

Department and its individually named officers now move to dismiss and for summary judgment.

**II. Legal Standards**

*A. Motion to Dismiss*

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1960 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1940. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly,* 550 U.S. at 555. In other words, the face of the complaint must contain enough

factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 256. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed.

*B. Summary Judgment*

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). A court must be

satisfied that "a reasonable jury could not return a verdict for the nonmoving party."  *Delta*, 530 F.3d 399.

When the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

**III. Discussion**

*A. Motion to Dismiss Mandeville Police Department as Party*

The Mandeville Police Department argues that it must be dismissed because it is not a juridical entity capable of suing or being sued.  (R. Doc. 68.)  Rule 17(b) of the Federal Rules of Civil Procedure provides that the capacity to sue or be sued is determined by "the law of the state where the court is located."  Defendants cite to an opinion by the Louisiana Court of Appeals

and several opinions from this District, all holding that certain local police departments are not amenable to suit. *See Dugas v. City of Breaux Bridge Police Dep't*, 757 So. 2d 741, 743-44 (La. Ct. App. 2000) (holding that the Breaux Bridge Police Department is not a juridical entity separate from the City of Breaux Bridge); *Manley v. State of Louisiana*, No. 00-1939, 2001 WL 506175, at *2 (E.D. La. May 11, 2001) (same with respect to New Orleans Police Department); *Causey v. Parish of Tangipahoa*, 167 F. Supp. 2d 898, 904, 909 (E.D. La. 2001) (same with respect to Tangipahoa Parish Sheriff's Office and City of Hammond Police Department); *Boudreaux v. Bourgeois*, No. 98-3809, 1999 WL 804080, at *3 (E.D. La. Oct. 7, 1999) (same with respect to Thibodaux Police Department); *Norwood v. City of Hammond*, No. 99-879, 1999 WL 777713, at *3-4 (E.D. La. Sept. 30, 1999) (same with respect to City of Hammond Police Department). Defendants, however, cite to no case establishing that *no* police department can be a juridical entity, nor do they cite to a case establishing that the Mandeville Police Department, the specific defendant here, is not a juridical entity. In the one case concerning the Mandeville Police Department, the Department was dismissed because the motion was unopposed. *See Bramlett v. Buell*, No. 04-518, 2004 WL 1243684, at *4 (E.D. La. June 3, 2004).

According to the Louisiana Supreme Court, the determination of whether an entity has legal capacity "will depend on an

analysis of specifically what the entity is legally empowered to do." *Roberts v. Sewerage & Water Bd. of New Orleans*, 634 So. 2d 341, 347 (1994). In particular,

> [t]he important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.

*Id*. at 346-47; *see also* LA. CIV. CODE art. 24 ("A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. The personality of a juridical person is distinct from that of its members."). In *Roberts*, the Louisiana Supreme Court found that the Sewage and Water Board of New Orleans had management and control that was sufficiently independent from the City of New Orleans to make it a separate juridical entity. *Roberts*, 634 So. 2d at 347-48.

In the case before the Court, the City of Mandeville is established under a home rule charter authorized by Article VI, Section 5 of the Louisiana Constitution of 1974. *See* City of Mandeville Charter § 1-01; *see also* LA. REV. STAT. § 33:361. The Charter defines the general powers of the city, which are recounted as follows.

7

> Except as otherwise provided by this charter the city shall continue to have all the powers, rights, privileges, immunities and authority heretofore possessed by Mandeville under the laws of the state. The city government shall have and exercise such other powers, rights, privileges, immunities, authority and functions not inconsistent with this charter as may be conferred on or granted to a local government subdivision by the constitution and general laws of the state, and more specifically, the city government shall have and is hereby granted the right and authority to exercise any power and perform any function necessary, requisite or proper for the management of its affairs, not denied by this charter, or by general law, or inconsistent with the constitution.

City of Mandeville Charter § 1-04. In addition, the structure of the executive branch of the city vests "executive and administrative authority over all departments offices [sic] and agencies of the city government" in the mayor. *Id.* at § 3-01. The mayor has the authority to see that the laws are faithfully executed, may suspend and remove government employees, and "[d]irect[s] and supervise[s] the administration of all departments, offices and agencies of the city government . . . ." *Id.* at § 3-05; *see also id.* at § 4-01 ("Except as otherwise provided by this charter, all departments, offices and agencies of the city and all employees thereof shall be under the direction and supervision of the mayor"). The Charter is silent as to whether the Police Department has the legal authority to sue and be sued.

This municipal structure is highly similar to the one described by this Court in *Norwood v. City of Hammond*, in which

the Court found that the Hammond Police Department was not a juridical entity capable of suing and being sued. Relying on *City Council of Lafayette v. Bowen*, 649 So. 2d 611, 616 (La. Ct. App. 1994), which found that the Lafayette City Council could not be sued because there was no authority giving it a separate legal personality, the Court examined the municipal structure of the City of Hammond. As here, it found the City to be constituted under a home-rule charter vesting the City with all powers that may be conferred upon a local government by the laws and constitution of Louisiana. *Norwood*, 1999 WL 777713, at *3-4. It further found that the mayor was given executive and administrative authority over municipal agencies and subdivisions and that no other laws established the Police Department as a separate entity. The Court therefore held that the Department could not be sued.

This reasoning is applicable here. Because the Mandeville Police Department has not been granted the legal capacity to function independently of the City of Mandeville, the Court finds that it is not a juridical entity that can be subject to suit. *Cf. Valentine v. Bonneville Ins. Co.*, 691 So. 2d 665, 668-69 (La. 1997) (noting that a Parish Sheriff's Department had no capacity to sue or be sued, "such status being reserved for the Sheriff"); *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991) (holding that, under Texas law, police department was not

9

authorized by city or home-rule charter to sue and be sued).
Accordingly, the Mandeville Police Department is dismissed from
this suit.

*B. Motion to Dismiss Official Capacity Claims*

Next, the individual employees of the Mandeville Police Department move to dismiss plaintiffs' claims against them in their official capacities. Defendants argue that because plaintiffs sued the Mandeville Police Department in addition to several employees in their official capacities, they seek to hold the Department liable twice for the same alleged conduct.

Defendants are correct that a suit against a municipal employee in his official capacity is the equivalent of a suit against the municipality, and that a plaintiff bringing a § 1983 action may not maintain an action against both. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *see also Moton v. Wilkinson*, No. 08-1356, 2009 WL 498487, at *1 (E.D. La. Feb. 26, 2009); *Shanks v. Parish of Jefferson*, No. 04-1057, 2004 WL 1737904, at *1 (E.D. La. July 30, 2004); *cf. Smith v. Amedisys, Inc.*, 298 F.3d 434, 449 (5th Cir. 2002) ("[A] plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity."); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (same).

Defendants' motion, however, fails for two independent

reasons. The first is that they have already successfully moved to dismiss the Mandeville Police Department from this litigation, and there is therefore no risk that the Department will twice be held liable for the same conduct. Secondly, a suit against the individual defendants in their official capacity is not a suit against the Mandeville Police Department. As detailed above, the Police Department is not a juridical entity that may be subject to suit. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . ." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). "[S]uits against [police] officers in their official capacity are basically suits against the municipality." *Daniel v. Compass*, 212 Fed. Appx. 262, 265 (5th Cir. 2006); *see also Brumfield v. Hollins*, 551 F.3d 322, 331 n.9 (5th Cir. 2008). Accordingly, plaintiffs' suit against the officers in their official capacity is functionally a suit against the City of Mandeville and not against the Mandeville Police Department. There is no risk of double liability, and the claims against defendants in their official capacities remain.

*C. Motion for Summary Judgment*

Defendants next move for summary judgment. First, they

claim that LaMartina-Howell's § 1983 claims should be dismissed under the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477 (1994). They note that LaMartina-Howell was ultimately convicted of school trespassing under LA. REV. STAT. § 17:416.10 and resisting arrest under LA. REV. STAT. § 14:108, the counts for which she was arrested. They point to a judgment after a bench trial in Louisiana state court that found LaMartina-Howell guilty of both counts. (R. Doc. 69, Ex. 1.) They also state that the appeals court denied her writ application and the Governor denied her application for clemency. (R. Doc. 69, Ex. 2.)

In *Heck*, a prisoner who had been convicted of voluntary manslaughter brought an action under § 1983 against police and prosecutors while his appeal was still pending, arguing that his arrest and conviction were unlawful. The suit, however, sought only damages. It did not request injunctive relief or release from custody. 512 U.S. at 478-79. The Court noted that § 1983 created a species of tort liability analogous to the common-law tort action of malicious prosecution. It noted that an action for malicious prosecution requires that the criminal proceeding be terminated in favor of the accused. Otherwise, a convicted defendant could mount a collateral attack on his conviction in the guise of a civil suit. *Id*. at 483-85.

Accordingly, the Court held that § 1983 claims for damages are "not appropriate vehicles for challenging the validity of

outstanding criminal judgments . . . ." *Id*. at 486. A plaintiff may bring a § 1983 action that would necessarily require the unlawfulness of his conviction, but only in particular circumstances. The Court held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id*. at 486-87 (emphasis in original). When a district court is faced with a § 1983 action for damages that implicate a conviction or sentence, it must determine whether a ruling for the plaintiff "would necessarily imply the invalidity" of the conviction or sentence. If the court determines that it would, the action cannot proceed unless the conviction has been vacated, invalidated, or overturned. An action that would not demonstrate the invalidity of the conviction should be allowed to proceed. *Id*. at 487.

LaMartina-Howell's conviction has not been reversed or called into question, and the Court must determine whether her claims would necessarily imply the invalidity of that conviction. Again, her § 1983 claim alleges that her federal constitutional rights were violated by the defendants, who were acting under

13

color of state law. *See Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472 (5th Cir. 1996) (noting that the arguments of *pro se* litigants are construed liberally). Specifically, she contends that her First Amendment rights were violated, that she was falsely imprisoned and maliciously prosecuted in violation of the Fourth Amendment, and that she was unreasonably searched and arrested without a warrant or probable cause in violation of the Fourth Amendment.

First, the Fourth Amendment claims brought by LaMartina-Howell against the defendants are barred by the *Heck* doctrine. She argues that defendants falsely arrested her in violation of the Fourth Amendment. Furthermore, she argues that the arrest was without probable cause and that she was unreasonably seized. These claims, if successful, would call into question LaMartina-Howell's state-court conviction. *Heck* itself used a very similar scenario to illustrate its holding.

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest. . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted.

*Heck*, 512 U.S. at 487 n.6; *see also* LA. REV. STAT. § 14:108(A). This is precisely the scenario here, and the action is thus barred under *Heck*. In addition, her claim for false arrest is

similarly barred.  Such a claim would necessarily imply that defendants' arrest of LaMartina-Howell was unlawful, and it is therefore not cognizable in a § 1983 action.  *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 n.18 (5th Cir. 2009) ("A false arrest claim also requires a showing that any resulting 'conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'") (quoting *Heck*, 512 U.S. at 486-87); *Queen v. Purser*, 109 Fed. Appx. 659, 660 (5th Cir. 2004).  Finally, she claims that she was maliciously prosecuted in violation of the Fourth Amendment.  The Court need not reach the *Heck* argument because malicious prosecution claims, in the absence of any additional constitutional claims, are not cognizable under § 1983.  *See Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) ("'malicious prosecution' standing alone is no violation of the United States Constitution, and that to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law").

With respect to LaMartina-Howell's First Amendment claims, she makes no allegations that her rights were violated other than by asserting that the motivation for her arrest was the stifling of her rights to free speech and free association.  It is of

course not always true that a First Amendment claim brought in a § 1983 action will necessarily imply the invalidity of the plaintiff's conviction or sentence. A claim of a First Amendment violation, separate and apart from other claims that *would* imply the illegality of a conviction, would be cognizable under § 1983. But here, LaMartina-Howell has provided no allegation that defendants engaged in any action other than the arrest that might have implicated her First Amendment rights. If she prevailed on this claim, the validity of the arrest and conviction would be called into question, and this claim, too, is barred by *Heck*.

This reasoning applies equally to LaMartina-Howell's claim for conspiracy to interfere with her civil rights under 42 U.S.C. § 1985. The § 1985 claim in the complaint recounts a conspiracy that focuses largely on the claims above, specifically the false arrest and First Amendment claims. There is nothing in this claim that might imply that defendants' involvement in the alleged conspiracy extended beyond their arrest of LaMartina-Howell. Like the First Amendment claim, a claim under § 1985 would not always imply the invalidity of an arrest. But here, the arrest provides the only suggestion that defendants were involved in the conspiracy. She has alleged nothing else, such as meetings or agreements between the parties, suggesting that defendants played any role in a conspiracy. To hold for LaMartina-Howell on her § 1985 claim would therefore imply the

invalidity of the arrest and conviction, and it is therefore barred under *Heck*.

All LaMartina-Howell's federal claims are *Heck*-barred, and defendants are accordingly entitled to summary judgment upon them. The claims she brings under state law cannot survive summary judgment either. In order to prevail on a malicious prosecution claim under Louisiana law, a plaintiff must prove (1) the commencement or continuance of an original criminal or civil law judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to the plaintiff. *Brungardt v. Summitt*, 7 So. 3d 879, 886 (La. Ct. App. 2009); *see also Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984). All elements must be present for a plaintiff to prevail. *Melius v. Keiffer*, 980 So. 2d 167, 173 (La. Ct. App. 2008). Here, defendants have presented uncontradicted evidence that the state proceedings did not terminate in favor of LaMartina-Howell, the present plaintiff. Accordingly, she cannot establish all elements of her malicious prosecution claim, and Defendants are entitled to summary judgment.

Her false arrest claim fails for similar reasons. In Louisiana, a claim of false arrest requires a showing that

17

(1) the plaintiff was detained, and (2) that the detention was unlawful. *Dumas v. City of New Orleans*, 803 So. 2d 1001, 1003 (La. Ct. App. 2001). "If a plaintiff is convicted of a crime for which he was arrested and indicted, and the conviction is affirmed, his detention is not unlawful as a matter of law." *Slaydon v. State Dep't of Wildlife & Fisheries*, 636 So. 2d 1151, 1152 (La. Ct. App. 1994); *see also Cooks v. Rodenbeck*, 711 So. 2d 444, 448 (La. Ct. App. 1998). Again, LaMartina-Howell has been convicted and that conviction has been affirmed. She cannot prevail on her state-law false arrest claim, and defendants are therefore entitled to summary judgment on this count as well.

Finally, LaMartina-Howell's claims for intentional and negligent infliction of emotional distress cannot survive summary judgment. In order to prevail on this claim, she must show that "(1) the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *Brungardt*, 7 So. 3d at 887; *see also White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). The defendant's conduct must be truly "extreme and outrageous." Conduct that is "merely tortuous or illegal does not rise to the level of being extreme and outrageous." *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017,

18

1025 (La. 2000).

Here, the conduct that LaMartina-Howell challenges is the arrest that has been deemed lawful by the Louisiana courts. She was convicted in part of resisting arrest, a charge that requires the underlying arrest to be lawful. *See* LA. REV. STAT. § 14:108(A); *see also State v. Lindsay*, 388 So. 2d 781, 782 (La. 1980) ("It is a long-established principle in Louisiana law that a citizen has the right to resist an unlawful arrest."); *State v. Washington*, 725 So. 2d 587, 590 (La. Ct. App. 1998). Again, she has not responded to defendants' motion or supplied any evidence whatsoever to demonstrate that a genuine issue of material fact remains for trial. She has pointed to nothing in the record would cast doubt on the propriety of the arrest, much less has she shown that any action taken by the Mandeville Police officers during this lawful arrest rose to the demanding level of "extreme and outrageous." Accordingly, she cannot prevail on this claim and the defendants are entitled to summary judgment.

**IV. Conclusion**

For the foregoing reasons, the Motion to Dismiss the Mandeville Police Department is GRANTED. The Motion to Dismiss Official Capacity Claims is DENIED. The Motion for Summary Judgment is GRANTED.

New Orleans, Louisiana, this ___12th___ day of November, 2009.

                    _____
                          **SARAH S. VANCE**
                      **UNITED STATES DISTRICT JUDGE**